J-A08006-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| L.E.C. F/K/A L.C.S., | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| J.A.S., | |
| Appellee | No. 1598 MDA 2014 |

Appeal from the Order Entered August 19, 2014
In the Court of Common Pleas of Centre County
Civil Division at No(s): 2009-1567

BEFORE:  SHOGAN, WECHT, and STRASSBURGER,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                     **FILED JUNE 29, 2015**

L.E.C. f/k/a L.C.S. ("Mother") appeals from the August 19, 2014 order that denied her petition to relocate from the State College area in Centre County, Pennsylvania, to her new home in Farmington, Connecticut, with her children, E.S., a daughter born in October of 1998, and C.S., a son born in December of 2000 (collectively, the "Children"), whom she had with her former husband, J.A.S. ("Father").  The order also modified an existing order in which the parties shared legal and physical custody of the Children, to provide that Father would have primary physical custody during the school year, and Mother would have primary physical custody in Connecticut during the summer.  The trial court further awarded Mother and Father partial

_____

[*]  Retired Senior Judge assigned to the Superior Court.

physical custody of the Children during the other parent's period of primary physical custody. As discussed *infra*, Father has filed a motion to dismiss this appeal due to alleged errors in Mother's Pa.R.A.P. 1925(b) statement. We affirm the decision of the trial court and deny Father's motion to dismiss.

The trial court set forth the factual background and procedural history of this case as follows:

> Presently before the Court is a Petition for Relocation filed by [Mother] on May 13, 2014. Mother relocated to Connecticut and seeks to modify this [c]ourt's Order of July 10, 2010, which ordered that the parties share legal and physical custody of the [Children], so that they may move with her.

> [Father] filed his Counter-Affidavit on May 14, 2014. On July 3, 2014, Father filed a Petition for Modification of Custody requesting primary custodial responsibilities during the school year and asking that Mother have primary custodial responsibilities during the summer if Mother relocates to Connecticut. Hearings on this matter were held on July 8, 2014, July 22, 2014, and August 11, 2014, and both parties have submitted briefs.

Trial Court Opinion, 8/19/14, at 1.

At the hearing on July 8, 2014, Mother presented the testimony of D.L.C., her mother. Also, the trial court interviewed the Children together, in chambers, with counsel for both parties present. Finally, Mother testified on her own behalf.

At a hearing on July 22, 2014, Mother continued her testimony. Thereafter, Father presented the testimony of R.A.Y., a family friend; S.E.H., E.S.'s former sixth grade teacher; and B.B., a licensed Pennsylvania private

- 2 -

detective hired by Father's counsel. Finally, Father testified on his own behalf.

At the hearing on August 11, 2014, Mother again testified on her own behalf. Father then testified on his own behalf and presented the testimony of C.F.S., his mother.

The trial court found that Mother relocated to Connecticut between the time of the hearing on July 8, 2014 and the hearing on July 22, 2014. The trial court then denied Mother's petition for relocation and modified the existing custody order to award Father primary physical custody during the school year, and Mother primary physical custody during the summer. In its opinion accompanying the August 19, 2014 order, the trial court stated the following:

> At the hearing held on July 22, 2014, Mother informed Father and the [c]ourt that she had relocated to Connecticut the previous weekend. The custody schedule will therefore necessarily change. Mother and Father propose similar Parenting Plans wherein the [C]hildren will remain with one parent during the school year and spend the majority of the summer with the other parent.
>
> After considering the record, the evidence, the testimony, and the parties' briefs, the Court finds that it is in the best interests of the [C]hildren to remain in the State College Area School District with Father.

Trial Court Opinion, 8/19/14, at 1-2.

On September 18, 2014, Mother filed a notice of appeal, along with a concise statement of errors complained of on appeal, pursuant to Pa.R.A.P.

1925, raising thirty allegations of trial court error. In her appellate brief Mother raises only the following two issues:

> 1. Whether the trial court abused its discretion and committed an error of law in awarding primary custody to Appellee/Father, where the evidence of record established that Appellee/Father is controlling, morally self-righteous, and less willing to cooperate with Appellant/Mother to advance the best interests of the adolescent children[?]

> 2. Whether the trial court abused its discretion and committed an error of law in refusing to allow the adolescent children to move to Connecticut with Appellant/Mother, despite the [C]hildren's well-reasoned and well-articulated preference to move with Appellant/Mother[?]

Mother's Brief at 3 (reordered for purposes of discussion).

On September 29, 2014, Father filed a motion to dismiss Mother's appeal on four bases: Mother's Pa.R.A.P. 1925 statement is not concise; certain issues raised in the statement are vague; Mother failed to preserve certain issues in the trial court; and the statement contains an issue of attorney discipline, which is within the exclusive jurisdiction of our Supreme Court. We find that, despite Father's complaints about Mother's Pa.R.A.P. 1925 statement, Mother preserved her first issue on appeal in issue eleven in her concise statement, citing 23 Pa.C.S. § 5337(h)(4). She preserved her second issue on appeal in her first and fourth issues in her concise statement. Therefore, we need not address the numerous matters about which Father complains in his motion. Accordingly, we deny Father's motion to dismiss.

Initially, we observe that, as the custody hearings in this matter were held on July 8, 2014, July 22, 2014, and August 11, 2014, the Child Custody Act ("the Act"), 23 Pa.C.S. §§ 5321 to 5340, is applicable. *See C.R.F. v. S.E.F.*, 45 A.3d 441, 445 (Pa. Super. 2012) (holding that, if the custody evidentiary proceeding commences on or after the effective date of the Act, *i.e.*, January 24, 2011, the provisions of the Act apply).

In custody cases, our standard of review is as follows:

> In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

*C.R.F.*, 45 A.3d at 443 (citation omitted).

We have stated:

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006).  Moreover, in

*M.A.T. v. G.S.T.*, 989 A.2d 11 (Pa. Super. 2010) (*en banc*), we stated the

following regarding an abuse of discretion standard:

> Although we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order.  An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused.  An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*Id.* at 18-19 (quotation and citations omitted).

With any custody case decided under the Act, the paramount concern

is the best interests of the child.  23 Pa.C.S. §§ 5328, 5338.  Section 5338

provides that, upon petition, a trial court may modify a custody order if it

serves the best interests of the child.  23 Pa.C.S. § 5338.  Section 5328(a)

sets forth the best-interest factors that the trial court must consider.  *E.D. v.

M.P.*, 33 A.3d 73, 80-81, n.2 (Pa. Super. 2011).

Section 5323 of the Act provides for the following types of awards:

> **(a) Types of award.**—After considering the factors set forth in section 5328 (relating to factors to consider when awarding custody), the court may award any of the following types of custody if it is in the best interest of the child:
>
> (1) Shared physical custody.
>
> (2) Primary physical custody.
>
> (3) Partial physical custody.
>
> (4) Sole physical custody.

(5) Supervised physical custody.

(6) Shared legal custody.

(7) Sole legal custody.

23 Pa.C.S. § 5323(a).

Section 5328(a) of the Act provides as follows:

## § 5328.  Factors to consider when awarding custody

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S. § 5328(a).[1]

_____

[1] Effective January 1, 2014, the statute was amended to include an additional factor at 23 Pa.C.S. § 5328(a)(2.1) (providing for consideration of child abuse and involvement with child protective services). Although
*(Footnote Continued Next Page)*

Where a request for relocation of the subject child along with a parent is involved, the trial court must consider the following ten relocation factors set forth within section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

*(Footnote Continued)* ⎯⎯⎯⎯⎯⎯⎯⎯

applicable at the time of the custody hearings in this matter, there was no evidence that would have required the trial court's consideration of this factor.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S. § 5337(h). **See E.D.**, 33 A.3d at 81-82 (stating that "Section 5337(h) mandates that the trial court *shall* consider all of the factors listed therein, giving weighted consideration to those factors affecting the safety of the child.").

In **A.V. v. S.T.**, 87 A.3d 818 (Pa. Super. 2014), this Court explained the following:

"**All** of the factors listed in section 5328(a) are required to be considered by the trial court when entering a custody order." **J.R.M. v. J.E.A.**, 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. **E.D.**, *supra* at 81. The record must be clear on appeal that the trial court considered all the factors. **Id.**

Section 5323(d) provides that a trial court "shall delineate the reasons for its decision on the record or in open court or in a written opinion or order." 23 Pa.C.S.A. 5323(d). Additionally, "section 5323(d) requires the trial court to set forth its mandatory assessment of the sixteen [Section 5328 custody] factors prior to the deadline by which a litigant must file a notice of appeal." **C.B. v. J.B.**, 65 A.3d 946, 955 (Pa. Super. 2013), *appeal denied*, [620 Pa. 727], 70 A.3d 808 (2013). Section 5323(d) applies to cases involving custody and relocation. **A.M.S. v. M.R.C.**, 70 A.3d 830, 835 (Pa. Super. 2013).

- 10 -

> In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." ***M.J.M. v. M.L.G.***, 63 A.3d 331, 336 (Pa. Super. 2013), *appeal denied*, [620 Pa. 710], 68 A.3d 909 (2013). A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***Id***. at 822-823.

Moreover, "[w]hen a custody dispute involves a request by a party to relocate, we have explained 'there is no black letter formula that easily resolves relocation disputes; rather, custody disputes are delicate issues that must be handled on a case-by-case basis.'" ***C.M.K. v. K.E.M.***, 45 A.3d 417, 421 (Pa. Super. 2012). As the party proposing the relocation, Mother had the burden of establishing that the relocation will best serve the interests of the Children as shown under the factors set forth in section 5337(h). ***Id***. at 427 n.1; 23 Pa.C.S. § 5337(i)(1). Each party had the burden of establishing the integrity of his motives in either seeking or opposing the relocation. ***C.M.K.***, 45 A.3d at 427 n.1; 23 Pa.C.S. § 5337(i)(2).

With regard to the section 5328(a) factors, the trial court found the following:

> **1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.**
>
> Both parties are likely to encourage and permit frequent and continuing contact between the [C]hildren and the other party. Mother and Father have each created traditions for the [C]hildren, such as spending the Fourth of July weekend with

- 11 -

Mother's family in Maine and going on an Easter egg hunt with Father, and each party supports the other in maintaining those traditions. Both Mother and Father also encourage and permit the [C]hildren to keep in contact with their extended family, especially their grandparents on holidays such as Mother's Day and Father's Day. When the [C]hildren are in Father's custody, he encourages them to contact Mother's parents on holidays, and vice versa.

The [c]ourt is concerned that Mother is not flexible about allowing the [C]hildren to spend time with Father and his extended family during her periods of custody when she is not able to be with the [C]hildren. In a recent example, Mother took [E.S.] to Johnstown for a basketball tournament on a Saturday and left [C.S.] alone for the day. [C.S.] spent the day biking with a friend and was then to come home and eat dinner alone. Father called [C.S.], found out he was spending the evening alone, and invited him to dinner at the Paternal Grandparents' house. After Father informed Mother of the same, she called [C.S.], yelled at him, and left him in tears. [C.S.] is entering the eighth grade and as such is still a child. Although he may be left alone for brief periods of time, the [c]ourt believes it would have been preferable for him to either have gone with Mother and [E.S.] to Johnstown or to have spent the evening with Father and Paternal Grandparents instead of spending the evening alone.

**2. The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.**

The parties did not present evidence regarding abuse committed by any party. Mother testified that she feels belittled by the way Father communicates with her. The [c]ourt did not observe Father belittling Mother and believes that the parties can avoid any accusations of the same by communicating through text messaging and email.

**3. The parental duties performed by each party on behalf of the child.**

Each party performs parental duties when the [C]hildren are in his or her care and custody. The parents each spend a great deal of time with their children and support them in their endeavors. Both parties assist the [C]hildren with their homework, coordinate their extracurricular activities, maintain routines for them, and attend their various sporting events. They separately plan annual vacations for the [C]hildren and take them to locales such as Maine, Florida, the Cayman Islands, and California. They also celebrate holidays such as Easter and Christmas with the [C]hildren.

**4. The need for stability and continuity in the child's education, family life and community life.**

Both children are very involved in sports in the State College Area School District and are excelling academically. [E.S.] is involved with basketball, volleyball, and track and field. [C.S.] is involved in football and volleyball. The [C]hildren have a great deal of extended family in the State College area with whom they share close relationships. Paternal Grandparents live in State College and regularly host Sunday night family dinners during Father's custody periods. Father's brother and sister-in-law and the [C]hildren's two cousins live in State College near where Mother lived, and [E.S.] in particular is close with her cousins. Both parents testified that the [C]hildren have a great network of friends in State College. By all accounts, the [C]hildren are thriving in their education, family life, and community life.

**5. The availability of extended family.**

In State College, the [C]hildren's Paternal Grandparents, uncle, aunt, and cousins are readily available and active in the [C]hildren's lives. As explained above, the [C]hildren enjoy family dinners at Paternal Grandparents' house on Sundays. Paternal Grandparents also attend their sporting and other extracurricular events, such as concerts. Paternal Grandparents are available to assist Father with childcare, particularly in the afternoons if he is unavailable to get the [C]hildren off the bus. Maternal Grandparents live in Connecticut but visit regularly, as often as twice per month to attend the [C]hildren's sporting events.

**6. The child's sibling relationships.**

- 13 -

The [C]hildren have lived together for their entire lives and no evidence was presented to suggest that they should be separated from one another.

**7. The well-reasoned preference of the child, based on the child's maturity and judgment.**

The [c]ourt interviewed the [C]hildren together. Both children are mature for their age and show good judgment. They first made it clear that they preferred the equally shared arrangement that they have now. Given that is no longer a possibility, [E.S.] expressed a preference to move to Connecticut with Mother. She stated that she would prefer to live with Mother because she feels Mother supports her while she does not always see eye to eye with Father. She also told the [c]ourt that she would probably ask to stay with Mother if it were Father who was planning to relocate. [C.S.] did not express a preference, but did explain how he had researched schools in Connecticut. He was impressed by what he learned about the Connecticut schools in his research.

Additionally, Mother testified that she would not have filed her Petition to Relocate if the [C]hildren had not told her they wanted to move to Connecticut. Based on the age and maturity of the [C]hildren, as well as Mother's testimony, the [c]ourt finds that [E.S.'s] desire to remain with Mother weighs in favor of Mother in this analysis, while [C.S.] remains neutral.

**8. The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.**

No evidence was presented regarding the attempts of a parent to turn the [C]hildren against the other parent.

**9. Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.**

Both parties appear to be capable of maintaining relationships with the [C]hildren that suit their emotional needs.

**10. Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.**

Both parties are equally capable of attending to the daily physical, emotional, developmental, and educational needs of the [C]hildren. Mother and Father are both actively involved in the [C]hildren's lives and tend to their physical, emotional, developmental, and educational needs.

**11. The proximity of the residences of the parties.**

Mother relocated to Farmington, Connecticut and Father resides in Port Matilda, Pennsylvania. The distance between the parties' homes is an approximately 5 ½ hour drive.

**12. Each party's availability to care for the child or ability to make appropriate childcare arrangements.**

Both parties are available to care for the [C]hildren or able to make appropriate childcare arrangements. Mother has occasionally allowed her paramour, [R.B.], to care for the [C]hildren while she has other engagements. Father presented testimony that Paternal Grandparents and his next door neighbors are available to help him with childcare on the few occasions where he needs it.

**13. The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.**

Although there is a high level of conflict between the parties, they appear able to cooperate to preserve each parent's relationship with the [C]hildren. Mother and Father communicate effectively through text messaging and email. Both parties must make an effort not to communicate with one another through the [C]hildren.

**14. The history of drug or alcohol abuse of a party or member of a party's household.**

Neither party presented evidence regarding any history of drug or alcohol abuse by a party or a member of a party's household. Mother admits to drinking alcohol when the [C]hildren are in Father's custody, and Father is concerned that photographs of Mother at an annual "Santa Crawl" drinking event in State College are publicly available on Facebook. On review of the photographs, the [c]ourt notes that Mother is not holding an alcoholic beverage in any of them. If [E.S.] or [C.S.] should happen upon the photographs, the [c]ourt is confident that Mother could explain the "Santa Crawl" event to them in an age-appropriate way.

**15. The mental and physical condition of a party or member of a party's household.**

Neither party presented evidence regarding the mental or physical condition of a party or a member of a party's household.

Trial Court Opinion, 8/19/14, at 2-7.

The trial court analyzed the relocation factors set forth in section 5337(h) as follows:

**1. The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.**

Both parties have significant relationships with the [C]hildren and are fit and capable parents who have evidenced a continuing desire to stay actively involved in their children's lives. These relationships have flourished under the shared physical custody arrangement that has been in place since April 3, 2009. Both parents support the [C]hildren academically, emotionally, and socially.

[E.S.] told the Court that she occasionally does not see eye to eye with her [f]ather, especially regarding her extracurricular activities. In one instance, [E.S.] wanted to participate in a traveling basketball team but Father did not approve of her doing so because she was doing poorly in her math class and he felt she was already overextended with school and sports. The issues between [E.S.] and Father are

exacerbated when Mother encourages [E.S.] to participate in activities without first speaking with Father. Although the [c]ourt appreciates that Mother embraces a style of parenting that emphasizes allowing teenagers to make their own decisions, [E.S.] and [C.S.] are still children who need their parents to cooperate in helping them to make those decisions. Mother and Father should communicate with one another about the [C]hildren's activities before encouraging the Children to participate.

The [C]hildren are closely bonded to one another and have significant relationships with both sets of grandparents. Both parents testified that the [C]hildren have strong networks of friends within State College. They are actively involved in the community, participating in sports and volunteering.

This factor weighs against relocation.

**2. The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.**

[E.S.] is currently 15 years old and entering the 10th grade while [C.S.] is 13 years old and is entering the 8th grade. Both children are very involved in sports, and [E.S.] is already practicing with her team in anticipation of the upcoming volleyball season. They are excelling academically, and [C.S.] is taking advanced math courses. Mother presented evidence to demonstrate that the [C]hildren would have the opportunity to continue their athletic pursuits in Connecticut, but they are already established with their coaches and teammates in volleyball, football, basketball, and track and field in State College.

This factor weighs against relocation.

**3. The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.**

The [c]ourt is concerned that Mother did not take into account the feasibility of preserving the relationship between the

nonrelocating party and the [C]hildren through suitable custody arrangements before she relocated to Connecticut considering the distance between State College, Pennsylvania and Farmington, Connecticut and the [C]hildren's busy schedules. The parties testified that the driving time between the two houses is approximately 5 ½ hours, resulting in the [C]hildren spending over 10 hours in the car to visit the noncustodial parent. As the [c]ourt has stated throughout this Opinion, the [C]hildren are very involved in multiple sports teams. The [c]ourt expects this involvement to grow as the [C]hildren advance in high school. The [C]hildren also have active social calendars with both friends and family. Finally, and perhaps most importantly, the [C]hildren have demanding academic schedules with honors classes. [C.S.] is already in advanced math, and the [c]ourt anticipates he will continue to carry a challenging academic load. The [C]hildren will have difficulty balancing such demanding schedules with monthly visits to the noncustodial parent.

This factor weighs against relocation.

**4. The child's preference, taking into consideration the age and maturity of the child.**

The [c]ourt adopts the analysis described under factor seven of the custody factors.

This factor weighs in favor of relocation.

**5. Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.**

The [c]ourt adopts the analysis described under factor one of the custody factors.

This factor weighs against relocation.

**6. Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.**

The relocation will improve Mother's quality of life because she has accepted a tenure track position in her chosen field and because her home in Connecticut is in close proximity to her parents, extended family, and friends. Mother testified that she put her career second to Father's while they were married and she feels that now is the right time to advance her career. Mother's financial situation in Connecticut appears to be substantially similar, if slightly improved, from her opportunities in Pennsylvania. Mother's home in Connecticut is substantially similar to her home in Pennsylvania.

This factor weighs in favor of relocation.

**7. Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.**

The [C]hildren have a high quality of life in Centre County, Pennsylvania. They are doing extremely well by all accounts academically, socially, and in their extracurricular activities. Mother presented evidence that the schools in Farmington, Connecticut are on par with the State College Area School District, the [C]hildren would be closer in proximity to Maternal Grandparents, and the [C]hildren would have the opportunity to participate in their chosen sports. Their overall quality of life in Connecticut would therefore be similar to their quality of life in Pennsylvania.

This factor weighs against relocation.

**8. The reasons and motivation of each party for seeking or opposing the relocation.**

Mother relocated to Connecticut to pursue a tenure-track position and testified that she is seeking relocation for the [C]hildren because they have expressed a desire to move with her. Mother testified that if the [C]hildren told her they did not want to move, then she would not have filed for their relocation.

Father's motivation in opposing relocation is that he believes it is in the [C]hildren's best interests to finish their schooling in the State College Area School District where they have flourished.

This factor weighs against relocation.

**9. The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.**

Mother testified that she feels Father belittles her every time they communicate, but the [c]ourt does not find this testimony credible. Additionally, there is no risk of harm to the [C]hildren or any other party.

This factor is neutral.

Based on the foregoing, the Court determines it is in the [C]hildren's best interests for Mother and Father to share legal custody and for Father to have primary physical custody subject to Mother's periods of partial physical custody.

The Court further finds that it is in the [C]hildren's best interests to remain in Centre County, Pennsylvania, and not to relocate to Farmington, Connecticut. Mother failed to meet her burden that it would be in the [C]hildren's best interests to move to Connecticut.

For all the foregoing reasons, the Court denies Mother's Petition to Relocate and orders that the parties shall share legal custody and Father shall have primary physical custody of the [C]hildren subject to Mother's periods of partial physical custody. These custody arrangements along with additional requirements for the parents are set forth below.

Trial Court Opinion, 8/19/14, at 7-11.[2]

_____

[2] We distinguish the instant case from **D.K. v. S.P.K.**, 102 A.3d 467, 477-478 (Pa. Super. 2014), in which a panel of this Court held that the trial court must consider section 5337(h) factors only where a parent is relocating with a child. In the instant matter, Mother filed her petition to relocate with the Children, but moved between the first and second day of hearings. Thus, the situation is distinguishable from the scenario in **D.K.** Accordingly, it was appropriate for the trial court to address the section 5337(h) factors in rendering its decision.

We first address Mother's issue in which she argues that the trial court abused its discretion in awarding primary custody to Father, as Mother contends that the evidence of record established that Father is controlling, morally self-righteous, and less willing to cooperate with Mother to advance the best interests of the adolescent children. Ultimately, Mother would like to have this Court re-weigh the evidence and make new credibility determinations. Mother's Brief at 55. Relying on *V.B. v. J.E.B.*, 55 A.3d 1193 (Pa. Super. 2013), Mother asks this Court to reverse the order of the trial court and substitute our own order permitting her to relocate and to modify the existing custody order and award her primary physical custody of the Children during the school year. *Id*. In the alternative, Mother asks that we vacate the trial court order and remand the matter to the trial court. *Id*.

The trial court acknowledged that Mother testified that Father belittles her every time they communicate. *See* Trial Court Opinion, 8/19/14, at 2, 10 (regarding its discussion of sections 5328(a)(2) and 5337(h)(9), as relates to abuse of a party or continued risk of harm to the child). The trial court did not observe Father belittling Mother at the hearings, and did not find Mother's testimony credible on this point. *Id*. Moreover, the trial court found that there was no risk of harm to the Children or any other party from Father. *Id*. The trial court suggested that the parties could avoid any

accusations of Father belittling Mother by communicating through text messages and email. *Id*. at 3 (section 5328(a)(2)).

With regard to section 5328(a)(13), the trial court found that, although there is a high level of conflict between the parents, they appear able to cooperate to preserve the other parent's relationship with the Children. *Id*. at 6 (section 5328(a)(13)). The trial court found that Mother and Father communicate effectively through text messaging and email, and instructed that both parties must make an effort not to communicate with one another through the Children. *Id*. The trial court accorded the abuse factor neutral weight with regard to relocation. *Id*. at 10 (section 5337(h)(9)).

Additionally, the trial court considered E.S.'s testimony that she occasionally does not see eye-to-eye with Father, especially regarding her extracurricular activities. Trial Court Opinion, 8/19/14, at 7 (section 5337(h)(1)). The trial court gave as an example the one instance in which E.S. wanted to participate in a traveling basketball team, but Father did not approve of her doing so because E.S. was doing poorly in her math class and Father felt she was already overextended with school and sports. *Id*. The trial court found that the issues between E.S. and Father are exacerbated when Mother encourages E.S. to participate in activities without first speaking with Father. *Id*. The trial court recognized that the parties have different parenting styles, but observed that the Children are teenagers who

need their parents to cooperate in assisting them in making decisions. *Id*. The court instructed the parties to communicate with one another about the Children's activities before encouraging the Children to participate. *Id*.

Moreover, the trial court found that the Children are closely bonded to one another and have significant relationships with both sets of grandparents. *Id*. at 8. The court stated that both parents testified that the Children have strong networks of friends in State College and are active in the community, participating in sports and volunteering. *Id*. The trial court determined that the first factor weighed against relocation. *Id*.

Further, in assessing section 5337(h)(5), the trial court found that Mother has engaged in behavior to thwart the relationship of the Children with Father, incorporating its discussion of section 5328(a)(1). *Id*. at 9 (section 5337(h)(5)). The trial court was concerned that Mother is not flexible about allowing the Children to spend time with Father and his extended family during her periods of custody when she is not able to be with the Children. *Id*. at 2-3. The trial court pointed to Mother's chastisement of C.S. when he spent an evening having dinner with Father and Father's parents, because Mother had left C.S. at home alone while she took E.S. to Johnstown for the day. *Id*. at 3 (section 5328(a)(1)). The trial court found that C.S. was in eighth grade and noted that he is still a child. *Id*. The court stated that, although C.S. may be left alone for brief periods, it would have been preferable for him to have accompanied Mother and E.S.

to Johnstown for the day, or to have spent the evening with Father and his paternal grandparents, instead of spending the evening alone. *Id*. at 3. The trial court, incorporating its findings with regard to section 5328(a)(1), found that factor 5337(h)(5), weighed against relocation. *Id*. at 9.

While Mother argues that Father is controlling, morally self-righteous, and unwilling to cooperate with her to advance the best interests of the Children, the trial court regarded Mother as the party who had been less cooperative with Father and found that Mother's behavior weighed against permitting her relocation with the Children. There is ample evidence in the certified record to support the trial court's credibility and weight determinations that Mother, not Father, has exhibited behavior that was not in the best interest of the Children.[3] Accordingly, we discern no abuse of the trial court's discretion in making this finding. *C.R.F.*, 45 A.3d at 443.

Next, we address Mother's contention that the trial court abused its discretion and committed an error of law in refusing to allow the Children to move to Connecticut to reside with Mother, despite a well-reasoned and well-articulated preference to live with Mother. In essence, Mother claims the trial court ignored the wishes of the Children. Regarding a child's

_____

[3] We note that although Father did not approve of Mother's participation in the Santa Crawl and the posting of the photographs to the Internet, the trial court did not weigh Mother's participation in the Santa Crawl, and the posting of the photographs depicting her participation in that event, against Mother. *See* Trial Court Opinion, 8/19/14, at 6-7 (discussing section 5328(a)(14)).

preference, this Court has long stated that the child's preference must be based on good reasons, and his or her intelligence must be considered. **_McMillen v. McMillen_**, 602 A.2d 845, 847 (Pa. 1992). "The weight to be given a child's testimony as to his preference can best be determined by the judge before whom the child appears." **_Id_**.

In assessing section 5328(a)(7), the trial court took into account the age and maturity of E.S. and C.S., finding them mature for their ages and showing good judgment. Trial Court Opinion, 8/19/14, at 4-5. The trial court considered the preference of the Children to remain with the existing equally shared custody arrangement. **_Id_**. at 5. The trial court also acknowledged E.S.'s stated preference to relocate with Mother because Mother supports her, and she does not always see eye-to-eye with Father. The trial court also recognized E.S.'s testimony that, if were Father the parent who was relocating to Connecticut instead of Mother, E.S. would desire to remain in Pennsylvania and to be placed in the primary custody of Mother. **_Id_**. at 5.

The trial court found that, although C.S. had researched schools in Connecticut and was impressed by the results of his research, C.S. did not express a preference for either remaining with Father in Pennsylvania or relocating to Connecticut with Mother. Trial Court Opinion, 8/19/14, at 5. Moreover, the trial court considered Mother's testifimony that, had the Children not told her that they wanted to move to Connecticut, she would

not have filed her relocation petition. *Id*. at 5, 10. The trial court concluded that, based on the ages and maturity of the Children, as well as on Mother's testimony, E.S.'s preference to remain with Mother weighed in favor of granting relocation as to E.S., but that the factor was neutral with regard to C.S. *Id*. at 5. The trial court also found that Father's motivation in opposing the relocation is that he believes it is in the Children's best interests to finish their schooling in the State College Area School District, where they have flourished. *Id*. at 10 (section 5337(h)(8)).

In its Pa.R.A.P. 1925 opinion, the trial court further explained the following:

> [W]hile important to the [c]ourt's analysis, [E.S.'s] well-reasoned preference to move did not overcome the weight of all of the other factors the [c]ourt is required to consider. The [c]ourt soundly determined[,] based on all of the factors together[,] that it was not in the [C]hildren's best interests to relocate. Father's opposition to the relocation was aligned with the [C]hildren's best interests.

Trial Court Opinion, 10/8/15, at 2.

Mother complains that the trial court did not acknowledge that C.S. expressed a preference to move to Connecticut and did not accord his stated preference any weight. The trial court's conclusion that C.S. stated his preference mainly based on the research he had done into the schools in Connecticut is supported by competent, clear, and convincing evidence in the record. However, we find no abuse of the trial court's discretion in failing to accord C.S.'s preference controlling weight. After a careful review

of the record in this matter, including the testimonial and documentary evidence, we discern that the trial court's conclusion as to the credibility and weight to be accorded to the preferences articulated by E.S. and C.S. is supported by the competent, clear, and convincing evidence in the record. *McMillen*, 602 A.2d at 847; *C.R.F.*, 45 A.3d at 443.

In summary, we conclude that the trial court did not abuse its discretion in determining that the weight of all of the factors, taken together, militated against granting Mother's petition for relocation. Accordingly, we affirm the order of the trial court denying relocation and modifying the physical custody order to award Father primary physical custody of the Children during the school year, and Mother primary physical custody during the summer. As previously mentioned, we deny Father's motion to dismiss the appeal.

Order affirmed. Motion to dismiss appeal denied.

Judge Wecht joins the Memorandum.

Judge Strassburger files a Dissenting Memorandum.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/29/2015

- 27 -